# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

VICTOR M. RIVERA, JR., and
JULIA A. RIVERA,

      Riveras,

vs.                                                                          No. CIV 11-1119 JB/RHS

DJO, LLC; DJO, INC. f/k/a DJ
ORTHOPEDICS, INC.; DOES I-IX;
ROE CORPORATIONS I-X,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on DJO, LLC's Motion to Response to Strike

Objections and Compel Discovery in Response to DJO, LLC's First Set of Interrogatories and

Requests for Production of Documents, filed May 10, 2012 (Doc. 81)("Motion to Compel").  The

Court held a hearing on May 31, 2012.  The primary issues are: (i) whether Plaintiffs Victor M.

Rivera, Jr. and Julia A. Rivera have asserted improper objections to Defendant DJO, LLC's Motion

to Compel; and (ii) whether the Riveras have withheld responsive information and documents that

they should have produced in discovery.  The Court will grant in part and deny in part the Motion

to Compel.  The Court will overrule the Riveras' objections, without prejudice to subsequent

renewal of those objections, and order that the Riveras produce information and documents related

to: (i) the requests for V. Rivera's past healthcare and health history, with the exception of

information or documents related to his eyes, colds, and male sexual dysfunction issues; and (ii) any

personal research, internet communications, and internet activities V. Rivera has conducted related

to pain pumps and the issues of this case, with the exception of privileged communications between

the Riveras and their counsel.  Because the Riveras represent that they do not possess any additional records concerning settlement payments, the Court will not compel their production unless such documents are later located.

## PROCEDURAL BACKGROUND

On June 7, 2011, the Riveras filed their Complaint for Personal Injury, Negligence, Products Liability, Punitive Damages.  See Doc. 1-2.  On December 1, 2011, the Riveras filed the First Amended Complaint for Personal Injury: Strict Products Liability, Negligence, *Res Ipsa Loquitur*, Loss of Consortium and Punitive Damages.  See Doc. 1-2 ("First Amended Complaint").  On December 22, 2011, the Defendants removed the case to federal court.  See Notice of Removal at 1, filed December 22, 2011 (Doc. 1).  In the First Amended Complaint, the Riveras assert that V. Rivera underwent arthroscopic surgery on his left shoulder at Lovelace Health System's Gibson Hospital in Albuquerque, New Mexico on May 21, 2004.  See First Amended Complaint ¶ 2, at 1. He asserts that the surgeon implanted a pain pump into his shoulder which was "manufactured, marketed, distributed and sold by one or more of the Defendants."  First Amended Complaint ¶ 2, at 1.  In Count 1, the Riveras assert that the pain-pump device and anesthetic medications used in it were unreasonably and dangerously defective, because of several labeling deficiencies, and that such defects contributed to V. Rivera's injuries.  See First Amended Complaint ¶¶ 16-17, at 6-7. In Count 2, the Riveras assert that each of the Defendants knew or should have known that the pain pump was unreasonably dangerous and defective when used as directed and designed, because of the available scientific and medical literature.  See First Amended Complaint ¶ 19, at 8. The Riveras allege that the Defendants were negligent in: (i) failing to warn the medical community about the dangers of using their pain pump and various anesthetics in the shoulder joint space; (ii) failing to provide adequate instructions regarding the safe use of the device; (iii) manufacturing, marketing,

and distributing a product designed to directly inject medications associated with cartilage damage into the shoulder joint space; and (iv) failing to conduct adequate testing to determine whether pain pumps filled with local anesthetics used in a joint space will cause cartilage damage.  See First Amended Complaint ¶¶ 19-20, at 7-9.  In Count 3, the Riveras assert that the events causing the injuries and damages to V. Rivera were of a kind which do not ordinarily occur in the absence of negligence.  See First Amended Complaint ¶ 25, at 10.  In Count 4, the Riveras allege that J. Rivera has suffered a loss of consortium as a direct and proximate result of the Defendants' negligence.  See First Amended Complaint ¶¶ 29-31, at 10.  The Riveras assert that they have suffered damages and ask for punitive damages.  See First Amended Complaint ¶¶ 32-37, at 11-12.

On March 16, 2012, the Riveras filed their Second Amended Complaint for Personal Injury, Strict Products Liability, Design Defect, Failure to Warn; Negligence; Breach of Implied Warranty; Negligent Packaging, Distribution and Marketing; Res Ipsa Loquitur, Punitive Damages; Loss of Consortium; and Damages.  See Doc. 69 ("Second Amended Complaint").  In addition to the allegations in the First Amended Complaint, the Riveras allege in the Second Amended Complaint that DJO, LLC breached its implied warranty that the pain pump was safe and fit for use.  See Second Amended Complaint ¶¶ 18-22, at 9-10.  They further allege that DJO, LLC was negligent in packaging, marketing, and distributing pain pumps, such as the one implanted in V. Rivera.  See Second Amended Complaint ¶¶ 22-28, at 10-12.

On May 10, 2012, DJO, LLC filed its Motion to Compel.  See Doc. 81.  DJO, LLC seeks an order "striking certain of Plaintiff's objections and compelling further discovery."  Motion to Compel at 1.  It asserts that, "[d]espite several attempts to resolve these matters with plaintiff, Victor M. Rivera ('Plaintiff'), Plaintiff has failed to withdraw certain improper objections."  Motion to Compel at 1.  It argues that the Riveras do not make clear whether they are withholding documents

-3-

or information based on their objections.  See Motion to Compel at 1.  It contends that, "[a]lthough

Plaintiff states he is not presently withholding documents or information based upon these

objections, he states that if there are responsive documents or information in the future 'the

objection has been made.'" Motion to Compel at 1.  DJO, LLC argues that the Riveras' second

supplemental responses to DJO, LLC's First Set of Interrogatories ("Interrogatories") numbers 6,

7, 12, 18, and First Set of Requests for Production of Documents ("RFP") numbers 5, 8, 9, 17, 20,

and 21 are insufficient.  Motion to Compel at 3.  It asserts that rule 26(b)(1) of the Federal Rules of

Civil Procedure defines the scope of discovery as "any nonprivileged matter that is relevant to any

party's claim or defense," and contends that the Riveras' objections drastically narrow the scope of

discovery.  Motion to Compel at 3.

DJO, LLC represents that Interrogatories Nos. 6, 7, and 18 and RFP Nos. 5, 8, and 9 request

information and documents concerning V. Rivera's past healthcare and health history.  See Motion

to Compel at 4.  It argues that the Riveras have asserted improper objections in response to those

requests which should be stricken.  See Motion to Compel at 4.  It states that the Riveras have

objected on the basis of relevance, undue burden, and privacy under state law.  See Motion to

Compel at 5.  It contends that the information and documents sought are relevant and reasonably

calculated to lead to the discovery of admissible evidence.  See Motion to Compel at 6.  DJO, LLC

asserts that the cases to which the Riveras cite regarding their privacy objection are not federal or

New Mexico cases, and do not concern discovery issues.  See Motion to Compel at 6.  It represents

that Interrogatory No. 12, and RFP Nos. 17 and 20, are relevant, because they seek information on

V. Rivera's internet communications and activities related to this suit.  See Motion to Compel at 6.

It argues that the Riveras have "again interposed improper objections" and that the Riveras have

stated that they do not currently have responsive information, but that if that changes in the future

-4-

an objection has been made.  Motion to Compel at 6.  DJO, LLC represents that the Riveras'

responses to these requests assert objections based on relevance, undue burden, "investigative

privilege," and "any other privilege applicable under the laws of the State of New Mexico" other

than the attorney-client and attorney-work-product privilege.  Motion to Compel at 7.  It argues that,

although the Riveras state there is no current responsive material, the Riveras intend to object to,

or limit the disclosure of, such information in the future.  See Motion to Compel at 7.  DJO, LLC

argues that V. Rivera's communications to third parties online are not protected from disclosure and

requests that the Court strike the objections while requiring the Riveras to disclose any relevant

information.  See Motion to Compel at 8.  With respect to RFP No. 21, which seeks documents

regarding any payments to the Riveras or their family as a result of the events and injuries of which

they complained, DJO, LLC asserts that the Riveras have "put off" providing the requested

documents.  Motion to Compel at 9.  It represents that the Riveras agreed to produce documents

regarding the settlement between the Riveras and the pain-pump manufacturers, but argues that the

Riveras have not yet done so.  See Motion to Compel at 9-10.  It contends that there is "no reason

for the delay in the production of these documents" and asserts that such documents are

discoverable.  Motion to Compel at 10 (citing Heartland Specialty Hosp., LLC v. Midwest Div., Inc.,

No. 05-2164, 2007 WL 1246216, at *4-5 (D. Kan. Apr. 27, 2007); Haynes v. Manning, 717 F.Supp.

730, 733 (D. Kan. 1989), aff'd 917 F.2d 450 (10th Cir. 1990)).  It asks that the Court strike the

Riveras' objections and order them to produce the documents.  See Motion to Compel at 10.

On May 24, 2012, the Riveras[1] filed the Plaintiff's Response to Defendant DJO, LLC's

---

[1]On May 21, 2012, the Riveras filed their Stipulation of Dismissal of Plaintiff, Julia A.
Rivera's Loss of Consortium Claim.  See Doc. 82 ("Stipulation").  J. Rivera stipulates to the
dismissal of her loss of consortium claim under rule 41(a)(1)(A)(ii).  See Stipulation at 1.

Motion to Strike Objections and Compel Discovery in Plaintiff Victor M. Rivera's Answers and Responses to DJO, LLC's First Set of Interrogatories and Requests for Production.  See Doc. 87 ("Response).  The Riveras assert that the Defendants request a summary of all of V. Rivera's medical records within a twenty-year time period, and that, while V. Rivera has done the best that he can, the language in which the Interrogatories are phrased is "an effort to have Plaintiff summarize medical records for the benefit of Defendants or worse to regurgitate what is already in the medical records."  Response at 4.  They argue that the information sought is not in V. Rivera's possession, and that the Interrogatories at issue are "merely to harass the Plaintiff and require the Plaintiff to rehash what is in the medical records."  Response at 4.  They contend that they have thoroughly answered Interrogatory Nos. 6, 7, and 18, as well as produced the documents requested in RFP Nos. 5, 8, and 9.  See Response at 5.  They further assert that they have appropriately responded and objected to the Interrogatories and RFPs, and that they continue to supplement their responses.  See Response at 13.  The Riveras argue that the Defendants' Interrogatories inquire as to "all illnesses, injuries, diseases or operations" which V. Rivera has suffered from within the past ten years and that none of the medical information requested is relevant to the contested issues in this case.  Response at 13.  They contend that there is "no objective medical evidence that these prior injuries and/or conditions are even relevant or similar to Plaintiff's injury and/or damages in this case."  Response at 13.  They assert that V. Rivera has a right to assert his objections to preserve them for trial in responding to the Defendants' requests for discovery.  See Response at 13.

With respect to Interrogatory No. 12, and to RFP Nos. 17 and 20, the Riveras maintain that they have thoroughly responded to these discovery requests.  See Response at 14.  They also reiterate that they appropriately objected.  See Response at 16.  They argue that V. Rivera has not maintained a personal website, and that the Defendants are seeking to compel V. Rivera to produce

information protected under the attorney-client and attorney-work-product privileges. <u>See</u> Response at 16. Addressing RFP No. 21, the Riveras represent that they have responded to that RFP with specificity. <u>See</u> Response at 16. They assert that V. Rivera has provided any settlement documents in his possession and that they do not know what other documents the Defendants seek. <u>See</u> Response at 17. They argue that they have "responded to Defendants' overbroad, overreaching, and onerous Interrogatories and Requests for Production of Documents and [have] clearly acted in good faith." Response at 17. They contend that they should not be required to expend additional time and money in providing further responses to which the Defendants are not entitled. <u>See</u> Response at 17.

The Court held a hearing on May 31, 2012. The Court stated that, if the DJO, LLC's concern is the objections and the Riveras want to keep those objections in place for future requests, what the Court will often do is overrule the objections to all presently known documents without prejudice to renewal. <u>See</u> Federal Digital Tape Recorder at 1:35:32-36:11 (May 31, 2012)(Court)("FTR"). The Court also noted that the Riveras do not appear to be currently withholding any documents. <u>See</u> FTR at 1:36:35-36:45 (Court). DJO, LLC stated that one of its concerns is D.N.M.LR-Civ. 26.6, which provides that, if the Defendants do not make a motion in response to objections, they are deemed to have accepted those objections. <u>See</u> FTR at 1:37:28-37:48 (Stewart). It asserted that it is not asking for more than good-faith diligence on the part of the Riveras and it does not expect V. Rivera to be an expert on his medical conditions. <u>See</u> FTR at 1:38:11-38:25 (Stewart). It contended that its concern is that the objections could be used to avoid discovery obligations in the future. <u>See</u> FTR at 1:38:27-38:39 (Stewart). DJO, LLC argued that the only Interrogatory or RFP to which the Riveras have not produced documents that should be in the Riveras' possession are documents responsive to RFP No. 21, related to any settlement agreements. <u>See</u> FTR at 1:38:39-38:58 (Stewart).

With respect to Interrogatory Nos. 6, 7, and 18, and RFP Nos. 5, 8, and 9, DJO, LLC stated that it is entitled to discover information regarding V. Rivera's preexisting and past conditions and treatment.  See FTR at 1:39:15-39:35 (Stewart).  It stated that V. Rivera's lost earnings and his inability to perform work functions may have been the result of injuries or conditions that existed before his shoulder surgery in 2004.  See FTR at 1:39:34-40:44 (Stewart).  DJO, LLC argued that the Riveras' objections to those discovery requests cite cases from other districts which are inapplicable to this matter.  See FTR at 1:40:50-41:05 (Stewart).  It further asserted that the Riveras' objections cite to improper discovery standards.  See FTR at 1:41:05-41:35 (Stewart).  DJO, LLC requested that the Court strike the objections.  See FTR at 1:41:47-41:54 (Stewart).  The Court then asked if the Riveras would be amenable to the Court overruling the objections, without prejudice to the Riveras renewing their objections if subsequent information develops.  See FTR at 1:42:24-42:47 (Court).  The Riveras responded that many of the discovery requests are objectionable, because the requests are not reasonably calculated to lead to admissible evidence and qualify as harassment, and that they did not agree that the Court should overrule their objections.  See FTR at 1:42:55-43:45 (Funk).  The Court then asked DJO, LLC on what issue the parties would like the Court to rule.  See FTR at 1:43:48-43:58 (Court).  DJO, LLC responded that it would discuss each Interrogatory individually.  See FTR at 1:43:59-44:16 (Stewart).

DJO, LLC represented that Interrogatory No. 6 asks the Riveras to describe any illnesses, injuries, diseases or operations, which V. Rivera suffered from before his May, 2004 surgery, and at any time after the surgery, but unrelated to the allegations in the Second Amended Complaint.  See FTR at 1:44:17-44:43 (Stewart).  DJO, LLC argued that this request could lead to admissible evidence regarding other injuries or occurrences that could have caused V. Rivera's alleged injuries.  See FTR at 1:44:44-46:58 (Stewart).  The Riveras contended that Interrogatory No. 6 was phrased

in a way which would require V. Rivera to disclose every single headache, cold, and flu symptom that he had experienced.  See FTR at 1:47:02-47:30 (Funk).  The Court agreed that it seemed difficult for the Riveras to determine what was relevant medical history, and the Riveras asserted that they had provided information about every orthopedic issue, major illness, injury, operations, and disease.  See FTR at 1:47:57-48:46 (Court, Funk).

The Court asked DJO, LLC if it would be willing to narrow the interrogatory.  See FTR at 1:49:15-49:19 (Court).  DJO, LLC responded that the Riveras' argument is misdirected, and that V. Rivera put his medical condition and ability to function at issue.  See FTR at 1:49:15-50:26 9 (Stewart).  The Riveras contended that the request was overbroad, and would require V. Rivera to disclose something as private and irrelevant as a sexual dysfunction issue.  See FTR at 1:50:27-52:27 (Funk).  The Court asked if DJO, LLC could narrow Interrogatory No. 6 to illnesses, injuries, diseases, and operations that caused the loss of income.  See FTR at 1:54:11-54:43 (Court).  DJO, LLC responded that narrowing the request in that way would allow V. Rivera to determine which medical issues may have contributed to his damages.  See FTR at 1:54:44-55:30 (Stewart).  The Court then overruled the objections to Interrogatory No. 6, but held that V. Rivera need not describe colds, anything related to his eyes, or any sexual dysfunction issues.  See FTR at 1:57:54- 57:24 (Court).

DJO, LLC next argued that the Court should compel V. Rivera to respond to Interrogatory No. 7, which seeks a description of all injuries, diseases, illnesses and surgeries on any joints from which V. Rivera suffered or which he underwent at any time.  See FTR at 1:57:27-57:52 (Stewart). DJO, LLC asserted that this evidence was relevant, because V. Rivera is alleging that he cannot carry and manipulate objects.  See FTR at 1:58:05-58:33 (Stewart).  DJO, LLC contended that the objection would permit the Riveras to avoid future discovery obligations. See FTR at 1:58:42-59:16

(Stewart).  The Court asked the Riveras if they would agree to the Court overruling the objection without prejudice to renewal in the future.  See FTR at 1:59:27-59:34 (Court).  The Riveras asserted that their concerns were the same as with respect to Interrogatory No. 6 and that DJO, LLC had not supported its contention that all joints are interconnected.  See FTR at 1:59:35-2:00:04 (Funk).  The Riveras further stated that they complied with Interrogatory No. 7, even though they believe it is overly broad.  See FTR at 2:00:04-00:15 (Funk). The Court overruled the objection for the present time, but stated that the objections could be renewed in the future.  See FTR at 2:00:24-00:30 (Court).

DJO, LLC argued that the rationale behind Interrogatory No. 18 was the same as with respect to Interrogatory No. 6.  See FTR at 2:00:55-:1:22 (Stewart).  DJO, LLC represented that Interrogatory No. 18 requested a list or description of all the medical institutions that had examined, tested, evaluated or treated V. Rivera  during the last twenty years, and what treatment was sought in each instance.  See FTR at 2:00:59-1:13 (Stewart).  The Court asked DJO, LLC whether the Court should impose the same rulings with respect to Interrogatories Nos. 6 and 7, and DJO, LLC agreed that it should.  See FTR at 2:1:22-1:30 (Court, Stewart).  The Riveras requested that the same exceptions detailed in the Court's holding regarding Interrogatory No. 6 apply to Interrogatory 18.  See FTR at 2:1:43-2:05 (Funk).  DJO, LLC asserted that such limitations were acceptable, and the Court overruled the objections to Interrogatory No. 18, subject to the limitations discussed with respect to Interrogatory No. 6.  See FTR at 2:2:07-2:24 (Court).  The Court suggested that the same solution might apply to RFP Nos. 5, 8, and 9.  See FTR at 2:2:24-2:30 (Court).  DJO, LLC and the Riveras agreed to the proposed ruling.  See FTR at 2:2:24-2:58 (Stewart, Funk).  The Court then ordered the Riveras to produce responsive materials related to RFP Nos. 5, 8, and 9, except such documents that relate to colds, eyes, or sexual dysfunction issues.  See FTR at 2:2:35-3:01 (Court).

DJO, LLC stated that, in Interrogatory No. 12, it requests V. Rivera's personal research

related to pain pumps, and his internet communications and activities relating to the issues in this case.  See FTR at 2:3:13-3:30 (Stewart).  It asserted that RFP No. 20 requests printed copies of those webpages.  See FTR at 2:4:39-4:47 (Stewart).  DJO, LLC argued that, through their objection, the Riveras are trying to avoid supplementing their response to this request.  See FTR at 2:3:28-3:58 (Stewart).  DJO, LLC also argued that it may have not received all responsive information, because, although the Riveras responded that V. Rivera did not maintain any websites, they failed to address the remainder of the requests in the Interrogatory.  See FTR at 2:4:50-5:30 (Stewart).  The Riveras' counsel, Adam Funk, represented that he did not believe his client had visited or searched websites, but that he would consult V. Rivera to ensure the response to Interrogatory No.12 was fully inclusive. See FTR at 2:5:38-6:23 (Funk).  The Court ordered that V. Rivera submit an amended response to DJO, LLC which fully answers Interrogatory No. 12.  See FTR at 2:7:08-7:16 (Court).  Additionally, the Court ordered that any documents related to the amended response be produced pursuant to the request in RFP No. 20.  See FTR at 2:7:17-7:53 (Court).

The Riveras argued that the language of Interrogatory No. 12 suggested a fishing expedition and required an extensive search of V. Rivera's hard drive.  See FTR at 2:8:05-8:49 (Funk).  They asserted that, because there was a seven-year period between the surgery and the Complaint, the request for all website searches and visits constituted harassment.  See FTR at 2:8:50-9:11 (Funk). DJO, LLC contended that it requested only information regarding those websites which V. Rivera visited that focused on the issues in this case.  See FTR at 2:9:13-9:57 (Stewart).  The Court found the requests in Interrogatory No. 12 and RFP No. 20 were proper, and overruled the objection.  See FTR at 2:10:00-10:04 (Court).  The Court ordered the Riveras to produce all responsive information from before they retained counsel but provided that the Riveras were not required to produce any responsive information which was subject to the attorney-client privilege. See FTR at 2:10:08-10:49

(Court).

DJO, LLC represented that RFP No. 17 requested all documents that related to research V. Rivera had performed on any pain pump.  See FTR at 2:10:57-11:05 (Stewart).  It noted that the Riveras objected to this request on privacy grounds.  See FTR at 2:11:06-11:26 (Stewart).  DJO, LLC reiterated its concern that the Riveras will use the objections to avoid supplementing their responses. See FTR at 2:11:26-11:29 (Stewart).  The Court overruled the Riveras' objection and ordered that they produce the documents responsive to RFP No.17, with the exception of any privileged attorney-client communications.  See FTR at 2:11:30-12:16 (Court).

DJO, LLC asserted that RFP No. 21 requests all records concerning payments to V. Rivera or his family as a result of the occurrences or injuries of which he complained in this action.  See FTR at 2:12:11-12:50 (Stewart).  DJO, LLC argued that the Riveras had stated that they would provide such documents in their supplemental responses, but that, to date, it had only received one letter discussing a possible settlement.  See FTR at 2:12:50-13:49 (Stewart).  It contended that, if the Riveras filled out any form as a term of the settlement, DJO, LLC was entitled to that form, and to any other form that reflects the terms and amount of settlement.  See FTR at 2:13:50-14:18 (Stewart). Mr. Funk responded that everything in his possession has been produced.  See FTR at 2:14:22-14:24 (Funk).  The Court asked whether Mr. Funk had a copy of the settlement agreement.  See FTR at 2:14:28-14:35.  Mr. Funk responded that he did not, but that he would inquire about an agreement with the third-party co-Defendants.  See FTR at 2:14:28-14:50 (Court, Funk).  DJO, LLC argued that it was unlikely that the Riveras or Mr. Funk did not possess a copy of the final settlement agreement which they had negotiated with other entities.  See FTR at 2:15:18-15:35 (Stewart).  The Court asked if V. Rivera was represented by co-counsel who would have a copy of any settlement agreement.  See FTR at 2:15:59-16:12 (Court).  Mr. Funk responded that V. Rivera currently was represented by co-

counsel, but Mr. Funk's firm was his only legal representation at the time of the settlement.  See FTR at 2:12:14-12:26 (Funk).  The Court asked if Mr. Funk could represent to the Court that neither his client nor his firm have any other documents responsive to RFP No. 21.  See FTR at 2:16:25-16:47 (Court).  Mr. Funk asserted that he had no such documents.  See FTR at 2:16:47-16:53 (Funk).  The Court held that, given Mr. Funk's representation, it would deny DJO, LLC's request to further supplement RFP No. 21.  See FTR at 2:17:00-17:11 (Court).

## RELEVANT LAW REGARDING DISCOVERY

The proper scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  Information sought is relevant "if the discovery appears reasonably calculated to lead to discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  Federal courts have held the scope of discovery under rule 26 is broad.  See Gomez v. Martin Marrietta Corp., 50 F.3d 1511, 1520 (10th Cir. 1995); Sanchez v. Matta, 229 F.R.D. 649, 654 (D.N.M. 2004)(Browning, J.)("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve the full disclosure of all potentially relevant information.").  The federal discovery rules reflect the courts' and Congress' recognition that "mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." Hickman v. Taylor, 329 U.S. 495, 507 (1947).  As a result of this policy, rule 26 "contemplates discovery into any matter that bears on or that reasonably could lead to other matter[s] that could bear on any issue that is or may be raised in a case." Anaya v. CBS Broad., Inc., 251 F.R.D. 645, 649-650 (D.N.M. 2007)(Browning, J.)(internal quotations marks omitted).

A district court is not, however, "required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim." McGee v. Hayes, 43 F.App'x 214, 217 (10th Cir. 2002)(unpublished).  See Tottenham v. Trans World Gaming Corp., No. 00 Civ. 7697, 2002 WL

1967023, at *2 (S.D.N.Y. 2002)(Knapp, J.)("Discovery, however, is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." (internal quotation marks omitted)); <u>Hardrick v. Legal Servs. Corp.</u>, 96 F.R.D. 617, 618 (D.D.C. 1983)(noting that courts do, and should, remain concerned about "fishing expeditions, discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests" (internal quotation marks omitted)).   "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant."   <u>Gomez v. Martin Marietta Corp.</u>, 50 F.3d at 1520 (internal quotation marks omitted).

Courts have recognized that, while it is true that relevance in discovery is broader than that required for admissibility at trial, "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue."   <u>Zenith Elecs. Corp. v. Exzec, Inc.</u>, No. 93 C 5041, 1998 WL 9181, at *2 (N.D. Ill. Jan. 5, 1998).   Courts have also recognized that "[t]he legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery."   <u>Zenith Elecs. Corp. v. Exzec, Inc.</u>, 1998 WL 9181, at *2 (internal quotation marks omitted).

Rule 26, which once stated that a party may obtain discovery on any matter "relevant to the subject matter," was amended in 2000 to state that the material must be "relevant to the claim or defense of any party,"   Fed R. Civ. P. 26(b)(1).   Under the 2000 amendment, however, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."   Fed. R. Civ. P. 26(b)(1).   The Advisory Committee explained that the amendment was "designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery."   Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000 amendment (stating that the

amendment was made with the intent "that the parties and the court focus on the actual claims and defenses involved in the action"). The Advisory Committee further explained:

> Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses, and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible.

Fed R. Civ. P. 26(b)(1) advisory committee's note to 2000 amendment.

Rule 34 requires a party on whom a request for production is served to "state . . . that inspection and related activities will be permitted as requested, unless the request is objected to . . . . If objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts." Fed. R. Civ. P. 34(b). Rule 37 provides enforcement mechanisms for rule 34. According to rule 37, if a party does not respond to an interrogatory or to a request for production, the party requesting the discovery may move the Court to compel the opposing party to respond. See Fed. R. Civ. P. 37(a)(2)(B). "[A]n evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(3). Accord Lewis v. Goldberry, No. 11-0283, 2012 WL 681800, at *4 (D.N.M. Feb. 27, 2012)(Browning, J.).

## LAW REGARDING MOTIONS TO STRIKE

Rule 12(f) of the Federal Rules of Civil Procedures provides:

> (f) **Motion to Strike**. The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
>
> > (1)    on its own; or
> >
> > (2)    on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the

pleading.

Fed. R. Civ. P. 12(f).  Professors Charles Alan Wright and Arthur Miller have recognized, however, that such motions are not favored and, generally, should be denied.

> The district court possesses considerable discretion in disposing of a Rule 12(f) motion to strike redundant, impertinent, immaterial, or scandalous matter.  However, because federal judges have made it clear, in numerous opinions they have rendered in many substantive contexts, that Rule 12(f) motions to strike on any of these grounds are not favored, often being considered purely cosmetic or "time wasters," there appears to be general judicial agreement, as reflected in the extensive case law on the subject, that they should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy. . . .

5C C. Wright & A. Miller, Federal Practice & Procedure § 1382, at 433-36 (3d ed. 2004)(footnotes omitted).  See Burget v. Capital W. Sec., Inc., No. CIV–09–1015–M, 2009 WL 4807619, at *1 (W.D. Okla. Dec. 8, 2009)(Miles-LaGrange, J.)(citing Scherer v. U.S. Dep't of Educ., 78 F.App'x 687, 689 (10th Cir. 2003)(unpublished)("While motions to strike are generally disfavored, the decision to grant a motion to strike is within the discretion of the court.").

Professors Wright and Miller have also commented on what constitutes "immaterial" matter in the context of a motion to strike.  "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded, or a statement of unnecessary particulars in connection with and descriptive of that which is material."  5C C. Wright & A. Miller, supra § 1382, at 433-36 (footnotes omitted).  Moreover, "[o]nly material included in a 'pleading' may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly.  Motions, briefs, . . . memoranda, objections, or affidavits may not be attacked by the motion to strike."  Dubrovin v. Ball Corp. Consol. Welfare Ben. Plan For Emps., No. 08-CV-00563-WYD-KMT, 2009 WL 5210498, at *1 (D. Colo. Dec. 23, 2009)(Daniel, J.)(quoting 2 M. Squiers & J. Moore, Moore's Federal Practice § 12.37[2], at 12–128 (3d ed. 2004)).  See Ysais v. N.M. Judicial

-16-

Std. Comm'n, 616 F.Supp.2d 1176, 1184 (D.N.M. 2009)(Browning, J.)(citing Searcy v. Soc. Sec. Admin., 956 F.2d 278, 1992 WL 43490, at *1, *4 (10th Cir. Mar 2, 1998)(unpublished table decision))("Generally . . . motions, briefs, and memoranda may not be attacked by a motion to strike.").  "The Federal Rules of Civil Procedure define 'pleadings' as a complaint or third-party complaint; an answer to a complaint, a third-party complaint, a counterclaim, or a crossclaim; and, 'if the court orders one, a reply to an answer.'"  Ysais v. N.M. Judicial Std. Comm'n, 616 F.Supp.2d at 1184 (quoting Fed. R. Civ. P. 7(a)).

## ANALYSIS

The Court will grant in part and deny in part the Motion to Compel.  The Court will order the Riveras to produce information and documents related to: (i) the requests for V. Rivera's past healthcare and health history information, except information or documents related to his eyes, colds, or any male sexual dysfunction issues; and (ii) any of V. Rivera's personal research, internet communications, and internet activities related to pain pumps and the issues of this case, with the exception of privileged attorney-client communications.  Because the Riveras represent that they do not possess any additional records concerning settlement payments, the Court will not compel their production unless such documents are later located.  See Motion to Compel at 9-10.[2]

**I.     THE COURT WILL OVERRULE THE RIVERAS' OBJECTIONS AND ORDER V. RIVERA TO PRODUCE PAST HEALTHCARE AND HEALTH HISTORY INFORMATION AND DOCUMENTS TO THE EXTENT SUCH INFORMATION OR DOCUMENTS EXIST, AND DO NOT RELATE TO THE EYES, COLDS, OR MALE SEXUAL DYSFUNCTION.**

---

[2]To the extent that the Motion to Compel asks that the Court strike the objections, the Court will deny the Motion to Compel.  A court does not ordinarily strike objections in memoranda.  See Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Corp., No. CIV 11-0103, 2012 WL 1132527, at *17 (D.N.M. 2012)(Browning, J.); Ysais v. N.M. Judicial Std. Comm'n, 616 F.Supp.2d at 1184.  The Court will, however, consider the arguments for striking an objection when deciding the Motion to Compel

DJO, LLC asks the Court to strike the Riveras' objections to Interrogatory Nos. 6, 7, and 18 and to RFP Nos. 5, 8, and 9. <u>See</u> Motion to Compel at 6. The Riveras object on the basis that such discovery requests are overly broad and unduly burdensome, and constitute an invasion of privacy. <u>See</u> Response at 5, 9. At the hearing, the Riveras argued that the language in the Interrogatories and RFPs would require the Riveras to describe irrelevant, private information. <u>See</u> FTR at 1:47:02-47:30 (Funk).

"Relevance is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action." <u>Gilkey v. ADT Sec. Servs., Inc</u>., 2012 WL 2449893, at *2 (D. Kan. June 26, 2012). <u>See</u> <u>Gomez v. Martin Marrietta Corp.</u>, 50 F.3d at 1520; <u>Sanchez v. Matta</u>, 229 F.R.D. at 654. The Court finds that V. Rivera's medical history and healthcare information is relevant to the Riveras' claims, because it may reasonably lead to admissible evidence about the cause of V. Rivera's injuries and damages. <u>See</u> <u>In re Kubler</u>, No. 11-0048, 2012 WL 394680, at *9 (D.N.M. Jan. 25, 2012)(Browning, J.)("Given that many of the medical records regarding D. Kubler are currently in the Kubler's possession or available from the applicable medical provider, the Court will also authorize some discovery."); <u>Stark-Romero v. Nat'l R.R. Passenger Co.</u>, 276 F.R.D. 531, 536 (D.N.M. 2011)(Browning, J.)("Because it is possible that Nerkowski's medical records will be relevant, the Court will order production of his medical records."). V. Rivera's medical history may indicate that other health concerns contributed to his injuries or explain V. Rivera's health at the time of his surgery. V. Rivera's claims in the Second Amended Complaint put his health into dispute and make relevant his medical history. <u>See</u>, <u>e.g.</u>, D.N.M.LR-Civ. 26.3. All of the cases to which the Riveras cite regarding the irrelevance of prior conditions are from state courts outside of New Mexico, and do not establish that such information will not lead to admissible

evidence.  See Response at 5.  "When the requested information appears to be relevant, the party objecting to the discovery has the burden to establish the information . . . is of such marginal relevance that the harm in producing the information outweighs the presumption in favor of broad disclosure."  Strating v. Abound Solar, Inc., No. 10-cv-02344, 2012 WL 882407, at *3 (D. Colo. Mar. 15, 2012).  On the other hand, the Riveras' assertion that medical issues regarding the eyes, colds, or male sexual dysfunction are not discoverable is correct.  This information is not likely to bear a relationship to the shoulder injury of which V. Rivera has complained, and V. Rivera's privacy and burden concerns outweigh its disclosure.  To the extent possible, the Court will respect V. Rivera's privacy and burden concerns and will not compel production of medical evidence related to irrelevant medical issues that he may have experienced.  The Court will overrule Riveras' objections to Interrogatory Nos. 6, 7, and 18, and to RFP Nos. 5, 8, and 9, without prejudice to the Riveras renewing such objections in the future.  The Court will order Riveras to produce medical information and records responsive to these requests, to the extent such information and records exist and do not involve  materials related to the eyes, colds, or male sexual dysfunction.

## II.    THE COURT WILL ORDER THE RIVERAS TO PRODUCE ANY PERSONAL RESEARCH OR RECORDS OF INTERNET ACTIVITIES RELATED TO PAIN PUMPS, CHONDROLYSIS,[3] THIS CASE, RELATED CLAIMS, V. RIVERA'S INJURIES, AND RELATED MEDICAL TREATMENT, TO THE EXTENT SUCH INFORMATION IS NOT SUBJECT TO ATTORNEY-CLIENT PRIVILEGE.

DJO, LLC requests that the Court compel the production of responsive information relating to Interrogatory No.12, and to RFP Nos. 12 and 17.  See Motion to Compel at 7-9.  At the hearing, DJO, LLC asserted that it was concerned that the Riveras would use their objections to avoid supplementing their responses in discovery.  See FTR at 2:3:28-3:58 (Stewart).  Its second concern

---

[3]Chondrolysis is the "[d]isappearance of articular cartilage as the result of disintegration or dissolution of the cartilage matrix and cells."  Stedman's Medical Dictionary 369 (28th ed. 2006).

was that it has not received all responsive information.  See FTR at 2:4:50-5:30 (Stewart).  The

Riveras argued that Interrogatory No. 12 constitutes a fishing expedition and seeks information which

the attorney-client privilege protects from discovery.  See FTR at 2:8:00-8:49 (Funk); Response at

14.  The Riveras further argued that additional responsive information does not exist.  See FTR at

2:38:6:23 (Funk).

The language in Interrogatory No. 12, and in RFP Nos. 17 and 20, is sufficiently narrow and

does not constitute a fishing expedition.  The requests are tailored to discover information related to

V. Rivera's claims, because they are limited to evidence relating to chondrolysis, this case, the related

claims, and/or any of V. Rivera's alleged injuries and related medical treatment.  DJO, LLC does not

seek all internet activity without limitation, but requests information regarding internet activities

related to the issues of this case.  Such information is "reasonably calculated to lead to the discovery

of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  Because the Riveras have not fully responded to

DJO, LLC's internet activity requests, the Court will order the Riveras to supplement their response

to Interrogatory No. 12 and produce any documents relevant to RFP Nos. 17 and 20. The Riveras are

not required to produce any communications from the Riveras to their attorney or that attorney-client

privilege otherwise protects.

### III.   THE COURT WILL DENY DJO, LLC'S REQUEST TO COMPEL DISCOVERY OF SETTLEMENT PAYMENTS TO THE RIVERAS ARISING OUT OF THE OCCURRENCES OR INJURIES COMPLAINED OF IN THIS ACTION.

DJO, LLC argues that the Riveras have failed to provide documents which are responsive to

RFP No. 21.  See Motion to Compel at 9.  At the hearing, the Riveras' attorney, Adam Funk, asserted

that they have provided everything in their possession and represented that they do not have

additional documents which would be relevant to RFP No. 21.  See FTR at 2:16:25-16:53 (Funk).

The Court cannot order the Riveras to produce documents which they do not possess.  See

Walker v. THI of N.M. at Hobbs Ctr., No. 09-0060, 2010 WL 552661, at *11 (D.N.M. Feb. 8, 2010)(Browning, J.)("[T]he Court will not require THI of Hobbs to produce documents it does not possess . . . ."). Because Mr. Funk has represented that neither he nor his clients possess any documents relating to payments arising out of this action, the Court must accept as true this representation. See Guidance Endodontics, LLC v. Dentsply Int'l, Inc., No. 08-1101, 2010 WL 965528, at *3 (D.N.M. 2010)(Browning, J.)(holding that "the Court must be able to accept the representations of counsel that it has turned over its responsive documents and that no others exist . . . . [I]f counsel represents to the Court that no such documents exist, the Court doubts that an order compelling production will make any difference"). If DJO, LLC discovers that this representation is not true, DJO, LLC may seek sanctions pursuant to rule 37. See Fed. R. Civ. P. 37. The Court will not order the Riveras to produce additional documents relevant to RFP No. 21, unless such documents are later located.

IT IS ORDERED that DJO, LLC's Motion to Strike Objections and Compel Discovery in Response to DJO, LLC's First Set of Interrogatories and Requests for Production of Documents, filed May 10, 2012 (Doc. 81), is granted in part and denied in part. The Court will order that Plaintiffs Victor M. Rivera and Julia A. Rivera produce information and documents related to: (i) V. Rivera's past healthcare and health history, with the exception of information or documents related to the eyes, colds, or male sexual dysfunction issues; and (ii) V. Rivera's personal research, internet communication, and internet activities related to pain pumps or the issues of this case, with the exception of privileged communications between the Riveras and their counsel. The Court will not compel production of any additional records concerning settlement payments, unless such documents are later located.

_____
UNITED STATES DISTRICT JUDGE

-21-

*Counsel*:

Robert K. Jenner
Janet, Jenner & Suggs, LLC
Baltimore, Maryland

--and--

Turner W. Branch
Adam T. Funk
Branch Law Firm
Albuquerque, New Mexico

  *Attorneys for the Plaintiffs*

Edward O'Reilly
Patrick Lysaught
Baker Sterchi Cowden & Rice, LLC
Kansas City, Missouri

--and--

Peter J. Lucca
Andrew R. Chivinski
Morris, Polich and Purdy, LLP
San Diego, California

--and--

M. Eliza Stewart
Madison, Harbour & Mroz, P.A.
Albuquerque, New Mexico

  *Attorneys for Defendants DJO, LLC and DJO, Inc., formerly known as*
   *DJ Orthopedics, Inc.*